UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ENLIGHTENED SOLUTIONS, LLC,    1:18-cv-06672-NLH-AMD

    Plaintiff,    **OPINION**

    v.

UNITED BEHAVIORAL HEALTH,
UNITE HERE HEALTH, and OPTUM
INC.,

    Defendant.

---

**APPEARANCES**:

JOHN C. AGNER
513 N. DORSET AVE
VENTNOR, NJ 08406
    On behalf of Plaintiff

MICHAEL H. BERNSTEIN
ROBINSON & COLE LLP
666 THIRD AVE, 20TH FLOOR
NEW YORK, NY 10017

CASSIE EHRENBERG
CLEARY, JOSEM & TRIGIANI LLP
CONSTITUTION PLACE
325 CHESTNUT STREET, SUITE 200
PHILADELPHIA, PA 19106
    On behalf of Defendants

**HILLMAN, District Judge**

    Plaintiff, a health care provider, has sued its patient's ERISA-governed health benefits plan for unpaid medical bills. Defendants have moved to dismiss Plaintiff's complaint, arguing

that Plaintiff has no viable claims because of an anti-assignment of benefits clause in the patient's health benefits plan. For the reasons expressed below, Defendants' motion will be granted.

**BACKGROUND**

From December 1, 2015 through May 31, 2016, Plaintiff, Enlightened Solutions LLC, provided detoxification and rehabilitation treatment to "JV" for his addiction. JV was insured under his mother's health benefits plan, Unite Here Health Plan Unit 102, which is governed by the Employee Retirement Income Security Act of 1974 (as amended), 29 U.S.C. § 1001, et. seq. ("ERISA"), and managed and administered by United Behavioral Health and Optum Inc. (hereinafter collectively referred to as "Defendants"). Plaintiff submitted claims to Defendants pursuant to an Assignment of Benefits entered between Plaintiff and JV, which stated, "I hereby authorize and request that payment of benefits by my Insurance Company(s), Optimum Blue Cross Blue Shield, be made directly to Enlightened Solutions, LLC for services furnished to me . . . ." (Docket No. 1-1 at 6-7.)

Defendants paid the claims for services provided on December 1, 2015 through January 29, 2016, and for services provided on March 10, 2016 through May 31, 2016. Defendants failed to pay Plaintiff's claims for February 1, 2016 through

2

March 10, 2016 in the amount of $27,115.  Plaintiff's complaint seeks payment for the claims Defendants have not paid for February and March 2016 based on Defendants' alleged violations of ERISA, as well as its attorney's fees.

According to Plaintiff's complaint, Defendants first denied those claims because they did not meet the required medical necessity.  In response to Plaintiff's appeal, Defendants again denied those claims, but this time on the grounds that Plaintiff submitted its own Assignment of Benefits ("AOB") form rather than Defendants' Assignment of Rights ("AOR") form, and further that the AOB was signed more than a year before the dates of service.  Plaintiff contends a denial on those bases constituted an abuse of discretion and was arbitrary and capricious because: (1) the AOB was not signed over a year before the claims, (2) Plaintiff's AOB contained the same information as Defendants' AOR, and (3) Defendants previously accepted Plaintiff's AOB and paid those claims.

Plaintiff has advanced two claims under ERISA.  Plaintiff's first count is failure to make all payments under 29 U.S.C. § 1132(a)(1)(B).  Plaintiff's second count is for breach of fiduciary duty and for equitable relief under 29 U.S.C. §§ 1132(a)(3), 1104(a)(1), and 1105(a).

Defendants have moved to dismiss Plaintiff's claims because the operative ERISA Plan contains a valid anti-assignment

provision which precludes Plaintiff's attempts to seek reimbursement on behalf of its patient. Defendants also argue that even though the Plan paid some of Plaintiff's claims for services provided to its patient, the Plan explicitly states that such payments do not constitute a waiver of the anti-assignment provision. Defendants further argue that Plaintiff lacks standing to pursue breach of fiduciary and other similar claims because those are causes of action only available to the patient himself. Plaintiff has opposed Defendants' motion.

## DISCUSSION

### A. Subject matter jurisdiction

Defendants removed this action to this Court from the Superior Court of New Jersey, Law Division, Atlantic County pursuant to 28 U.S.C. §§ 1331, 1441(a) & (c), and 28 U.S.C. § 1446. Federal question jurisdiction exists in this matter pursuant to 28 U.S.C. § 1331. ERISA further provides that the district courts of the United States shall have at least concurrent, and sometimes exclusive, jurisdiction over the ERISA causes of action pleaded in the complaint. 29 U.S.C. § 1132(e)(1).

### B. Standard for Motion to Dismiss

"Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter." N. Jersey Brain & Spine Ctr. v. Aetna, Inc., 801 F.3d 369, 371 n.3

(3d Cir. 2015).  When, however, statutory limitations to sue are non-jurisdictional, such as when a party claims derivative standing to sue under ERISA § 502(a), a motion challenging such standing is "properly filed under Rule 12(b)(6)."  Id. (explaining that in practical effect, a motion for lack of statutory standing is effectively the same whether it comes under Rule 12(b)(1) or 12(b)(6)) (citation omitted).

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41,

5

47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its

face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

**C. Analysis**

ERISA confers standing upon a participant in, or beneficiary of, an ERISA plan by allowing that participant or beneficiary to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This provision also confers standing upon a medical provider to sue the plan through an assignment from a plan participant.

American Chiropractic Ass'n v. American Specialty Health Inc., 625 F. App'x 169, 174–75 (3d Cir. 2015) (quoting CardioNet, Inc. v. CIGNA Health Corp., 751 F.3d 165, 176 n.10 (3d Cir. 2014)). An assignment of the right to payment assigns the right to enforce that right by bringing suit under ERISA to collect money owed. Id. (citing N. Jersey Brain & Spine Ctr. v. Aetna, Inc., 801 F.3d 369 (3d Cir. 2015)). Such an assignment "serves the interest of patients by increasing their access to care" and reduces the likelihood of medical providers "billing the beneficiary directly and upsetting his finances." Id. (quoting CardioNet, 751 F.3d at 179 (quotation marks omitted)).

In this case, Defendants argue that the Plan participant's assignment of benefits to Plaintiff is invalid under the explicit anti-assignment provision in the Plan, and Plaintiff therefore lacks standing to bring its claims. Plaintiff disagrees, and has presented several alternative bases for why its claims may proceed: (1) waiver, (2) unenforceable ambiguous terms, (3) estoppel, and (4) that JV's assignment of benefits constitutes a power of attorney, which places Plaintiff into the shoes of JV and outside of the anti-assignment provision. The first step in the analysis is to look at the Plan's anti-assignment provision.

The Plan states in relevant part:

<u>Non-Assignment of Claims</u>.

> A Claimant may not assign his/her Claim under the Plan to a
> Nonparticipating Provider without the Plan's express
> written consent. Regardless of this prohibition on
> assignment, the Plan may, in its sole discretion, pay a
> Nonparticipating Provider directly for Covered Expenses
> rendered to a Claimant. Payment to a Nonparticipating
> Provider does not constitute a waiver, and the Plan retains
> a full reservation of all rights and defenses.

(Docket No. 16-4 at 77.)[1]

It is not in dispute that JV did not assign his claims under the Plan to Plaintiff, a nonparticipating provider, with the Plan's express written consent. Defendants therefore argue that JV's assignment of claims to Plaintiff is not valid.

Despite this explicit condition on the assignment of claims in the Plan, Plaintiff argues that several factors make the anti-assignment provision unenforceable. First, Plaintiff argues that the Plan waived its right to enforce the anti-assignment provision because it paid some of Plaintiff's claims, including claims that were initially denied but then paid after Plaintiff's appeal. Second, Plaintiff argues that the Plan should be estopped from enforcing the provision based on similar reasoning to the waiver argument. Third, Plaintiff argues that the anti-assignment provision is ambiguous and therefore unenforceable because another provision in the Plan allows the Plan participant "or his authorized representative" to appeal an

---

[1] The Court may consider the Plan documents because they are the basis of Plaintiff's claims. <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

9

adverse benefits decision, which Plaintiff contends contradicts the anti-assignment clause.  Finally, Plaintiff argues that the AOB constitutes a power of attorney, and through that power of attorney, JV conferred on to Plaintiff as his agent the authority to assert all claims JV might have against Defendants.

The Court finds Plaintiff's arguments to be unavailing, and they are all squarely addressed by the Third Circuit in <u>American Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield</u>, 890 F.3d 445, 453 (3d Cir. 2018).  There, when faced with competing arguments for why anti-assignment provisions in ERISA-governed health benefit plans should or should not be enforceable, the Third Circuit noted that "ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties." <u>American Orthopedic</u>, 890 F.3d at 453 (quotations and citation omitted).  The Third Circuit found "no compelling reason to stray from the black-letter law that the terms of an unambiguous private contract must be enforced," and concluded that "anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable."  <u>Id.</u> (quotations and citations omitted).

Under that guiding premise, the Third Circuit evaluated the anti-assignment clause at issue and the plaintiff's arguments for why it was not enforceable.  The anti-assignment provision

provided: "The right of a Member to receive benefit payments under this Program is personal to the Member and is not assignable in whole or in part to any person, Hospital, or other entity." Id. (citation omitted).

Plaintiff, the health care provider to which its patient, Joshua the plan participant, assigned his right to payment, argued that the defendant insurers waived their ability to enforce the anti-assignment provision because they "accepted and processed the claim form, issued a check to Joshua, and failed to raise the anti-assignment clause as an affirmative defense during the internal administrative appeals process." Id. at 453-54. The Third Circuit disagreed.

Noting that a waiver requires a "clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it,"[2] the Third Circuit found that "routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal do not demonstrate an evident purpose to surrender an objection to a provider's standing in a federal lawsuit." Id. at 454 (citing

---

[2] The Third Circuit applied Pennsylvania law because of the plan's choice-of-law clause, American Orthopedic, 890 F.3d at 453, but the standard for waiver is the same in New Jersey, see Scibek v. Longette, 770 A.2d 1242, 1250 (N.J. Super. Ct. App. Div. 2001) ("Waiver involves the intentional relinquishment of a known right and must be evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be based.").

11

several cases from the District of New Jersey for the same proposition).

The Third Circuit also addressed the plaintiff's argument that the document the plan participant signed, titled "Assignment of Benefits & Ltd. Power of Attorney," reflected that in addition to assigning to the plaintiff his right to pursue payment for claims under his health insurance plan for the medical care plaintiff provided, Joshua also granted to the plaintiff a limited power of attorney to recover the payment on his behalf through an arbitration or lawsuit.  Id. at 448.

The Third Circuit ultimately concluded that the plaintiff had waived that argument by not raising the issue in its opening or reply brief, and instead only addressing it in supplemental briefing ordered by the court.  Id. at 455.  But before doing so, the Third Circuit explained how a power of attorney is different from an assignment of benefits.  Id. at 454-55.

> Assignments and powers of attorney differ in important respects with distinct consequences for the power of a plan trustee to contractually bind an insured.  An assignment purports to transfer ownership of a claim to the assignee, giving it standing to assert those rights and to sue on its own behalf.  Thus, a plan trustee can limit the ability of a beneficiary to assign claims because, among the parties' "power to limit the rights created by their agreement," Restatement (Second) of Contracts § 322 cmt. a (1981), is the power to restrict ownership interest to particular holders.  A power of attorney, on the other hand, "does not transfer an ownership interest in the claim," but simply confers on the agent the authority to act "on behalf of the principal."

> As these principles apply here, our holding today that the
> anti-assignment clause is enforceable means that Joshua, as
> plan beneficiary, did not transfer the interest in his
> claim, but it does not mean that Joshua cannot grant a
> valid power of attorney. To the contrary, because he
> retains ownership of his claim, Joshua, as principal, may
> confer on his agent the authority to assert that claim on
> his behalf, and the anti-assignment clause no more has
> power to strip Appellant of its ability to act as Joshua's
> agent than it does to strip Joshua of his own interest in
> his claim.

Id. (some internal quotations and citations omitted).

Thus, the teachings of the Third Circuit in American Orthopedic are: (1) the terms of an unambiguous private contract must be enforced, (2) unambiguous anti-assignment clauses in ERISA-governed health benefit plans are enforceable, (3) routine processing of claims does not amount to an insurer's waiver to enforce an anti-assignment clause, and (4) a valid anti-assignment clause does not preclude a medical provider who holds a valid power of attorney from asserting the participant's claims against the ERISA plan.

Applying those lessons to this case, a participant in Defendants' Plan may not assign his claims to a nonparticipating provider without the Plan's express written consent. This language is clear and unambiguous on its face, as well as by comparison to dozens of almost identical provisions at issue in other cases. See, e.g., id. at 454 (citing cases). That a provision in the Plan regarding appeals of adverse claim determinations may be advanced by a claimant's "authorized

13

representative" does not cause this explicit pre-condition to assignment of claims to be unclear. See, e.g., Drzala v. Horizon Blue Cross Blue Shield, 2016 WL 2932545, at *3 (D.N.J. 2016) (citing In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 58 F.3d 896, 903 (3d Cir. 1995); Taylor v. Cont'l Grp. Change in Control Severance Pay Plan, 933 F.2d 1227, 1234 (3d Cir. 1991)) (other citation omitted)) ("A term is ambiguous where the language is susceptible to more than one reasonable interpretation. In determining whether a particular clause in a plan document is ambiguous, courts must first look to the plain language of the document. If the plain language is clear on its face, then the terms of the plan control and courts may not look to other evidence."). Because the anti-assignment clause has only one reasonable interpretation, and because JV did not obtain the Plan's express written consent to enter into the AOB with Plaintiff, the Plan's prohibition on assigning the payment of JV's claim to Plaintiff is valid, and must be enforced.

Plaintiff's arguments that because the Plan processed some of Plaintiff's claims Defendants waived the anti-assignment provision's application, or that Defendants' enforcement of the provision must be estopped, are without teeth.[3] As the Third

---

[3] Under New Jersey common law, estoppel differs from waiver in that waiver is a unilateral relinquishment of a right, while estoppel is based on the reliance of one individual upon another. Scibek v. Longette, 770 A.2d 1242, 1250 (N.J. Super.

Circuit instructed, regular processing of claims, even after an internal appeals process, does not constitute a waiver. Here, that holding is reinforced by the Plan's explicit language to

---

Ct. App. Div. 2001). To establish a claim of equitable estoppel, the claiming party must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment. Miller v. Miller, 478 A.2d 351, 355, (N.J. 1984). "The doctrine is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment." Haskins v. First American Title Ins. Co., 866 F. Supp. 2d 343, 348 (D.N.J. 2012). To the extent that Plaintiff's common law estoppel claim is even viable, see Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44-45 (1987) (holding that ERISA preempts any and all state law claims "insofar as they may now or hereafter relate to any employee benefit plan covered by ERISA"), that claim fails because the express terms of the Plan clearly delineate the parameters of a plan beneficiary's assignment of claims, and Plaintiff's reliance on the Plan's payment of other claims does not amount to an "injustice" since Plaintiff (1) could have obtained the Plan documents to definitively determine its right to the payment of JV's benefits, and (2) it obtained payments that it ultimately may not have been entitled to in the first place based on JV's failure to obtain the Plan's written consent to assign his claims.

Separate from a common law cause of action for equitable estoppel, under ERISA, a beneficiary can make out a claim for equitable relief based on a theory of equitable estoppel, and to succeed under this theory of relief, an ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances. Pell v. E.I. DuPont de Nemours & Co. Inc., 539 F.3d 292, 300 (3d Cir. 2008) (citing 29 U.S.C. § 1132(a)(3)) (other citation omitted). This claim cannot be advanced by Plaintiff because it is not a plan beneficiary, and, as discussed below, Plaintiff does not hold a valid power of attorney to assert this claim on JV's behalf.

the same effect – "Payment to a Nonparticipating Provider does not constitute a waiver, and the Plan retains a full reservation of all rights and defenses." This, too, is an unambiguous and therefore enforceable contract term that precludes the finding that payment of some of Plaintiff's claims waives Defendants' right to invoke the anti-assignment provision for other claims.

With regard to Plaintiff's contention that the assignment of benefits constitutes a power of attorney, that argument fails for two reasons. First, Plaintiff does not advance that claim in its complaint. Thus, the Court cannot consider it. Recognizing this deficiency, Plaintiff requests leave to amend its complaint to assert claims pursuant to the purported power of attorney. Such an amendment would be futile, however.

The second reason Plaintiff's power of attorney argument fails is because the assignment of benefits does not constitute a valid power of attorney under New Jersey law. In New Jersey, "power of attorney" "means a duly signed and acknowledged written document in which a principal authorizes an agent to act on his behalf." N.J.S.A. 46:2B-10. "A power of attorney must be in writing, duly signed and acknowledged in the manner set forth in R.S.46:14-2.1." N.J.S.A. 46:2B-8.9. The maker of the power of attorney "shall appear before an officer specified in

R.S.46:14-6.1[4] and acknowledge that it was executed as the maker's own act." N.J.S.A. 46:14-2.1. "The officer taking an acknowledgment or proof shall sign a certificate stating that acknowledgment or proof," and the certificate must also state: "(1) that the maker or the witness personally appeared before the officer; (2) that the officer was satisfied that the person who made the acknowledgment or proof was the maker of or the witness to the instrument; (3) the jurisdiction in which the acknowledgment or proof was taken; (4) the officer's name and title; (5) the date on which the acknowledgment was taken." Id.

The document that Plaintiff wishes to construe as a power of attorney is titled "Assignment of Benefits / Release of Medical Information." (Docket No. 1-1 at 6.) Putting aside that the content of the document only relates to JV's permission for Plaintiff to release his medical information to his insurance company and for Plaintiff to seek payment from his insurance company, and not to act on his behalf in a broader capacity to encompass other ERISA-based claims that are not barred by the anti-assignment clause, the formalities of a valid power of attorney are not met. The document is signed by JV and

---

[4] Officers who are authorized to take acknowledgements are, *inter alia*, "(1) an attorney-at-law; (2) a notary public; (3) a county clerk or deputy county clerk; (4) a register of deeds and mortgages or a deputy register; [and] (5) a surrogate or deputy surrogate." N.J.S.A. 46:14-6.1.

17

underneath his signature is typed "Staff present: Tara Peak, CADC, INTERN." (Id. at 7.) There is no indication that the staff member is an "officer" under N.J.S.A. 46:14-6.1, and the staff member provides no signature and the other requirements of a proper acknowledgement under N.J.S.A. 46:14-2.1. "An acknowledgment is not an insignificant formality." In re Adelphia Communications Corp. Securities and Derivative Litigation, 2011 WL 6434009, at *2 (S.D.N.Y. 2011) (analyzing a purported power of attorney under New Jersey law and holding that the plain language of the New Jersey statute clearly requires acknowledgement by a designated officer for a power of attorney to be valid).

Even though American Orthopedic found that a valid assignment of benefits clause does not preclude a plan beneficiary's medical provider from advancing claims against a plan pursuant to a power of attorney, in order for the medical provider to do so it must actually hold a valid power of attorney. The "Assignment of Benefits / Release of Medical Information" document signed by JV does not satisfy the requirements of a power of attorney under New Jersey law. Consequently, any amendment to the complaint to assert claims based on this document as a power of attorney would be futile.

## CONCLUSION

For the reasons expressed above, the anti-assignment

provision in Defendants' Plan is valid and enforceable.  Because JV did not obtain written consent from the Plan to assign his claims to Plaintiff, Plaintiff does not hold a valid assignment through which to pursue its claims here.  Similarly, Plaintiff does not hold a valid power of attorney and cannot prosecute JV's claims on his behalf.  Consequently, Defendants' motion to dismiss Plaintiff's complaint must be granted.[5]

An appropriate Order will be entered.


Date: December 4, 2018            s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

---

[5] Plaintiff's second count for Defendants' alleged breach of fiduciary duty and for equitable relief fails for the same Plaintiff's arguments concerning waiver, estoppel, and the purported power of attorney fail.